# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TENNESSEE
# CHATTANOOGA

| | | |
|---|---|---|
| CHARLES FRANKLIN BURKHALTER, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | No. 1:22-cv-307 |
| ~v~ | § | |
| | § | |
| CITY OF EAST RIDGE, | § | **JURY DEMAND** |
| | § | |
| JOSH CREEL, | § | |
| Assistant Police Chief of East Ridge | § | |
| Police Department and in his Individual | § | |
| Capacity, | § | |
| | § | |
| HAMILTON COUNTY GOVERNMENT, | § | |
| | § | |
| UNKNOWN NUMBER OF JOHN/JANE DOE | § | |
| DEFENDANT LAW ENFORCEMENT OFFICERS, | § | |
| | § | |
| BETH HICKMAN, | § | |
| In her individual capacity | § | |
| d/b/a Sugar Plum (aka Sugarplums | § | |
| Antiques and Treasures), | § | |
| | § | |
| STEPHANIE NOBLE, | § | |
| In her individual capacity d/b/a | § | |
| Nobel's Antiques & Curiosities, | § | |
| | § | |
| AARON MURRAY, | § | |
| In his individual capacity and as an agent | § | |
| of Flatlands III, LLC, | § | |
| | § | |
| FLATLANDS III, LLC, | § | |
| | § | |
| ROBIN NAVE-MONTERO, | § | |
| In her individual capacity | § | |
| d/b/a The Robin's Nest, | § | |
| | § | |
| RANDALL W. KEITH (aka Randy Keith), | § | |
| In his individual capacity and as an agent | § | |
| of East Town Antiques, LLC, | § | |
| | § | |
| EAST TOWN ANTIQUES, LLC, | § | |

~ 1 ~

| | |
|---|---|
| KATIE GLAZE, | § |
| In her individual capacity | § |
| d/b/a The Green Gardinia, | § |
| | § |
| JESSICA WHEELER, | § |
| In her individual capacity | § |
| d/b/a Department One Three, | § |
| (aka Dept One Three), | § |
| | § |
| MIKE BRUCE, | § |
| In his individual capacity and as an agent | § |
| of Holy Smoke Premium Cigars & | § |
| Pipes, PLLC, | § |
| | § |
| GREGG BOWMAN, | § |
| In his individual capacity and as an agent | § |
| of Holy Smoke Premium Cigars & | § |
| Pipes, PLLC, | § |
| | § |
| HOLY SMOKE PREMIUM CIGARS & | § |
| PIPES, PLLC, | § |
| | § |
| *Defendants.* | § |

"However, I will say that you are not a true public servant until you have been sued by Robin Flores. I consider it a badge of honor that the same attorney who frequently sues police officers, has now turned his attention to me."

Attorney General Coty Wamp
(quoted from Times/Free Press and WRCB)

## COMPLAINT FOR DAMAGES
## AND CLASS ACTION CERTIFICATION

The Plaintiff ("Plaintiff"), Charles Franklin Burkhalter, through his attorney Robin Ruben

Flores, and complaining of Defendants, CITY OF EAST RIDGE; JOSH CREEL; HAMILTON

COUNTY GOVERNMENT; UNKNOWN NUMBER OF JOHN/JANE DOE DEFENDANT

LAW ENFORCEMENT OFFICERS; BETH HICKMAN; STEPHANIE NOBLE; AARON

MURRAY; FLATLANDS III, LLC; ROBIN NAVE-MONTERO; RANDALL W. KEITH;

EAST TOWN ANTIQUES, LLC; KATIE GLAZE; MIKE BRUCE; GREG BOWMAN; and

HOLY SMOKE PREMIUM CIGARS & PIPES, PLLC[1], states as follows

**Preliminary Statement:**

1.     On November 16, 2022, starting at about 7 am, District Attorney General Coty Wamp ("Wamp) initiated a sudden and draconian forced removal of Plaintiff and hundreds of citizens of the United States and the State of Tennessee from their homes, which resulted in hardships for these hapless persons. As averred *infra*, this drastic conduct resulted in the need to bring this litigation to seek redress for the unlawful acts by the Defendants.

## THE CLASS

2.     Plaintiff brings this action in his individual capacity and as a representative plaintiff ("Plaintiff") for the Class pursuant to FED. R. CIV. P., Rule 23.

3.     The proposed Class is made up of all those residents of the Budgetel who were unlawfully removed from their homes and deprived of their personal property by the Defendants. The Plaintiff and each member of the Class hold claims that arose in the Eastern District of Tennessee, and Hamilton County, Tennessee. Further factors that support certification of the Class are:

      a.     *Numerosity*

4.     The Class is so numerous that joinder of each member's claim would prove impractical. Although the exact number is currently unclear, the numbers are between 300 to 700 persons. Certification of the Class would support judicial economy.

---

[1] Hereinafter, the term, "individual defendants" shall refer to all defendants herein except Defendants Hamilton County Government and City of East Ridge. The corporate LLC and PLLC entities are herein defined and identified by Plaintiff as individuals pursuant to *Citizens United v. Federal Election Commission*, 558 U.S. 310 (2010).

   b.  *Common Questions of Law and Fact*

5. As set forth in this Complaint, the Plaintiff and each Class Member were impacted by the single act of a sudden and unlawful eviction and deprivation of property.

6. As set forth in this Complaint, the Plaintiff and each Class Member must prove that the Defendants acted in concert with one another; must prove that each individual defendant acted under color of law; must prove that the actions by the individual Defendants were a result of the pattern and practice of the City; must prove deprivations of protected rights; must prove that the Doe Defendants acted under their authority as deputies for the Office of the Hamilton County Sheriff; must prove that the violations set forth in this Complaint resulted in damages that must be proved by the same methodology; and must prove that as a result of the unlawful actions of the Doe Defendants that the County has a duty to indemnify the said Does.

   c.  *Typicality*

7. The Plaintiff's claims are typical to each Class Member, and thus the Class. His claims, and those of the Class Members are based upon the single impact of the ill-conceived and poorly executed and unlawful conspiracy, based upon the same legal theories, and based upon the same character of harm, injury, and deprivation.

   d.  *Fair Representation*

8. The Plaintiff will fairly and adequately represent the Class Members. As shown *supra*, there are abundant common factual and legal issues within the claims of the Plaintiff and each Class Member, which illustrate that there are common interests shared by the Plaintiff and each Class Member. The Plaintiff's motivations and interests are such that he will vigorously prosecute the case on his behalf and on behalf of each Class Member.

9. The Plaintiff and each Class Member will be represented by attorney Robin Ruben Flores ("Flores"), a licensed attorney with extensive litigation experience in the field of Civil Rights litigation.

10. Flores has practiced before this Court since 2001 and is admitted to the Sixth Circuit Court of Appeals and the United States Supreme Court. Flores has practiced before the Sixth Circuit Court of Appeals in civil rights and criminal appeals.

11. Flores is also admitted to practice law in the following other Courts:

    a. All state Courts in the State of Georgia.

    b. The United States District Court, Northern District of Georgia.

    c. The Eleventh Circuit Court of Appeals.

    d. The Federal Circuit Court of Appeals.

    e. The Court of Appeals for the Armed Forces.

    f. The Court of Appeals for Veterans' Claims.

12. Flores is very familiar with the policies of the City and the County; has established relations with attorneys for the City and the County; has established relations with private attorneys who are retained from time to time to represent individual defendant law enforcement officers; and has even been noted by Wamp that being sued by Flores is a "badge of honor."

13. Flores was admitted to practice law in the State of Tennessee in 2000, and in the State of Georgia since 2008. Flores has tried cases before juries in both states.

14. Flores' experience in this Court, and his ability to carry any appeal all the way to the highest court of the land will provide a full representation to the Class.

e.  *Predominance*

15.    The Class is sufficiently cohesive enough to warrant adjudication by representation. Each Class Member may be entitled to different amounts and types of damages based upon his/her particular experience and thus may require individualized proof. However, the methodology of proving damages of each issue is the same.

16.    The factual and legal issues shared by the Plaintiff and each Class Member are subject to generalized proof and common questions predominate over individual ones.

f.  *Superiority*

17.    A Class Action suit is superior to any other available method for fairly and efficiently adjudicating the claims. A Class Action will achieve economies of scale, time, effort, and expense, and will result in uniformity of decision as to all members. Hence, should the Plaintiff require an appeal, the appellate courts will benefit also.

g.  *Humiliation and Embarrassment*

18.    The recent litigation in the state court, and the very public comments by Wamp would subject the Class Members to humiliation, embarrassment, and stigmatization. Some of the comments by Wamp were to the effect:

- referring to the Budgetel as a "cesspool;"

- that crime was rampant at the Budgetel;

- that "violent sex offenders" were present thus necessitating the need to force the children from their homes;

- that the Class Members could afford other housing.

19.     The impact of the ill-considered and unfortunate public comments by Wamp was to paint with a broad brush ***ALL*** Class Members and the Plaintiff as sloven criminals, and sex offenders who chose to live in "squalor."

20.     If this Class is certified, none of the Class Members will be required to appear in open court, yet each will be entitled to a judgment for damages if the suit is successful.

21.     The Class Members' rights of privacy may also be protected by confidentiality orders if necessary.

22.     If the Class is not certified, many of the Class Members may forego their rights to assert a claim.

23.     The Plaintiff is fully aware that he will be the public face of the Class, and he knows that the whole matter may be linked to his name alone. However, he is willing to take on the duties and responsibilities of a Plaintiff.

**Nature of the Case:**

24.     This is an action seeking redress from the Defendants for the violation and deprivation of certain rights secured to the Plaintiff under the Fourth and Fourteenth Amendments to United States Constitution. As set forth, Plaintiff further seeks to pursue this matter as a Class Action pursuant to FED. R. CIV. P., Rule 23.

25.     This is also an action seeking redress from the Defendants for damages that arose from their violations of the laws of the State of Tennessee.

26.      Plaintiff brings this action pursuant to 42 U.S.C. §§ 1983 and 1988 against Defendants Josh Creel; Unknown Number of John/Jane Doe Defendant Law Enforcement Officers; Beth Hickman; Stephanie Noble; Aaron Murray; Flatlands III, LLC; Robin Nave-Montero; Randall W. Keith; East Town Antiques, LLC; Katie Glaze; Mike Bruce; Greg

Bowman; and Holy Smoke Premium Cigars & Pipes, PLLC, in their individual capacities, and against Defendants Hamilton County Government and City of East Ridge

27.     Plaintiff brings these federal claims against the individual defendants Beth Hickman; Stephanie Noble; Aaron Murray; Flatlands III, LLC; Robin Nave-Montero; Randall W. Keith; East Town Antiques, LLC; Katie Glaze; Mike Bruce; Greg Bowman; and Holy Smoke Premium Cigars & Pipes, PLLC pursuant to state concert theory as established in *Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922 (1982).

28.     Plaintiff raises state law claims against the individual defendants for conversion, negligence, and civil conspiracy. Plaintiff raises the state law claims of negligence against the City.

29.     Plaintiff raises these claims against Hamilton County Government pursuant to TENN. CODE ANN. § 8-8-302 and for indemnification.

30.     Plaintiff raises these claims against East Town Antiques, LLC, Flatlands III, LLC and Holy Smoke Premium Cigars & Pipes, PLLC under concepts of respondent superior.

31.     Plaintiff seeks compensatory damages and punitive damages against the individual defendants in their individual capacities and compensatory claims against City of East Ridge and Hamilton County Government. Plaintiff seeks attorney's fees against all defendants pursuant to 42 U.S.C. § 1988. Plaintiff seeks to have this matter certified as a Class Action under FED. R. CIV. P., Rule 23, and to be named as the Plaintiff.

**Jurisdiction and Venue:**

32.     Plaintiff's claims for relief are predicated upon 42 U.S.C. §1983, which authorizes actions to redress the deprivation, under color of state law, of rights, privileges, and immunities secured to the Plaintiff by the Constitution of the United States.

33.     This action arises under the Fourth and Fourteenth Amendments to the United States Constitution. This court has jurisdiction over this action under 28 U.S.C. §§1331 and 1343. As to the Plaintiff's state claims, this Court has jurisdiction over the state claims pursuant to 28 U.S.C. § 1357 as they arise from the same case and involve the same controversies.

34.     Venue is proper in the Eastern District of Tennessee under 28 U.S.C. §1391(b)(1) and (2) because the events complained of occurred in this District, and because, on information and belief, Defendants reside or have resided in this District or have operated within this District.

**The Parties:**

PLAINTIFF

35.     Plaintiff Charles Franklin Burkhalter, is a United States citizen and a resident of Hamilton County, Tennessee.

36.     Plaintiff is a honorably discharged, disabled Vietnam Era veteran of the United States Navy.

37.     Plaintiff relies solely on the Veteran's Administration ("VA") for his health care.

38.     Plaintiff's sole source of income is his disability benefits from the VA and the Social Security Administration.

CITY OF EAST RIDGE

39.     Defendant City of East Ridge ("City") is a municipal corporation formed under the laws of the State of Tennessee and operated a law enforcement agency known as the East Ridge Police Department ("Department"). The City is a Council-Manager form of municipal government that is advised by a City Attorney, who in this case, is Mark Litchford.

40.     The City had a duty under state and federal law to ensure that its law enforcement officers are properly trained to perform their duties; are properly supervised during the

performance of their duties; and to ensure their law enforcement officers comply with federal and state laws and that the officers do not violate the constitutional rights of all persons.

41.     Plaintiff sues the City in that the unlawful constitutional violations averred herein were a result of a pattern and practice of the City that was the driving force behind the said acts. Additionally, Plaintiff sues the City in that a high-level policy maker, Defendant Josh Creel was directly involved in the unlawful acts and the omissions averred herein, and that the individually named Defendants, as identified *infra*, acted with an agent of the Attorney for the City and with Defendant Josh Creel in a conspiracy as set forth herein.

42.     Plaintiff also sues the City pursuant to the Tennessee Governmental Tort Liability Act.

HAMILTON COUNTY GOVERNMENT

43.     Defendant Hamilton County Government ("County") is a municipal corporation formed under the laws of the State of Tennessee and operated a law enforcement agency known as the Hamilton County Sheriff's Office ("Office").

44.     The County had a duty under state and federal law to ensure that its law enforcement officers are properly trained to perform their duties; are properly supervised during the performance of their duties; and to ensure their law enforcement officers comply with federal and state laws and that the officers do not violate the constitutional rights of all persons.

45.     Plaintiff also sues the County pursuant to the Tennessee Governmental Tort Liability.

46.     Plaintiff sues the County pursuant to TENN. CODE ANN. § 8-8-302 and under its statutory obligation to indemnify any Doe defendant who engaged in the unlawful acts and

omissions as averred herein while acting within the scope and course of their employment with the County.

DEFENDANT JOSH CREEL

47.     At all relevant times Defendant Josh Creel ("Creel") was the assistant chief of police for the Department, and he was the person who signed under oath a petition for abatement authored by District Attorney General Coty Wamp ("Wamp"). This petition for abatement ("petition"), described further in this Complaint, was the instrument and pretext that initiated the unlawful actions set forth in this Complaint.

48.     At all relevant times, Creel acted within the scope and course of his employment with the City and he also acted under color of law.

49.     Plaintiff sues Creel in his individual capacity.

UNKNOWN NUMBER OF JOHN/JANE DOE
DEFENDANT LAW ENFORCEMENT OFFICERS
(HEREINBEFORE AND AFTER "DOES")

50.     During a judicial proceeding in the Hamilton County Criminal Court on December 5, 2022, Creel testified that members of the Hamilton County Sheriff's Office ("Does") acted in concert with Creel and officers of the Department during the commission of the unlawful seizure of Plaintiff's personal property; the removal of Plaintiff from his residence; and the unlawful seizure of personal property and the removal of a large number of other residents of what will be later identified as the "Budgetel."

51.     Consequently, the Does acted within the scope and course of their employment with the County and acted under color of law.

52.     Plaintiff sues the Does in their individual capacities.

BETH HICKMAN

~ 11 ~

53. At all times relevant, Beth Hickman ("Hickman") operated a store known as "Sugar Plum" in East Ridge, Tennessee.

54. Hickman was a participant to the petition and thus a participant to the unlawful acts averred herein.

55. On **November 10, 2022**, Hickman signed an affidavit in her individual capacity before J. Michael Holloway ("Holloway") a notary public for the State of Tennessee. Holloway is also an attorney who practices law in the offices of the East Ridge City Attorney, Mark Litchford ("Litchford"). Creel and Wamp incorporated that affidavit in the petition.

56. At all relevant times, Hickman acted in concert with co-defendants City, County, Does, and Creel, and thus acted under color of law.

57. Based upon Hickman's affidavit, and the lack of an easily verifiable corporation listed with the Tennessee Secretary of State known as Sugar Plum that operated in East Ridge, Tennessee, Plaintiff avers that Hickman operated Sugar Plum as a sole proprietor.

58. Plaintiff sues Hickman in her individual capacity.

<u>STEPHANIE NOBLE</u>

59. At all times relevant, Stephanie Noble ("Noble") operated a store known as "Noble's Antiques & Curiosities" in East Ridge, Tennessee.

60. Noble was a participant to the petition and thus a participant to the unlawful acts averred herein.

61. On **November 10, 2022**, Noble signed an affidavit in her individual capacity before Holloway. Creel and Wamp incorporated that affidavit in the petition.

62. At all relevant times, Noble acted in concert with co-defendants City, County, Does, and Creel, and thus acted under color of law.

~ 12 ~

63. Based upon Noble's affidavit, and the lack of an easily verifiable corporation listed with the Tennessee Secretary of State known as Noble's Antiques & Curiosities that operated in East Ridge, Tennessee, Plaintiff avers that Noble operated Noble's Antiques & Curiosities as a sole proprietor.

64. Plaintiff sues Noble in her individual capacity.

## AARON MURRAY

65. At all times relevant, Aaron Murray ("Murray") managed a store known as Champy's World Famous Fried Chicken ("Champy's") in East Ridge, Tennessee.

66. Murray was a participant to the petition and thus a participant to the unlawful acts averred herein.

67. Although he claimed in an affidavit to be the "General Manager" for Champy's, Murray signed the affidavit in his individual capacity. Murray signed the affidavit on **November 11, 2022**, before Holloway. Creel and Wamp incorporated that affidavit in the petition.

68. In the alternative, Murray acted also as an agent for Flatlands III, LLC, which owned and operated Champy's.

69. At all relevant times, Murray acted in concert with co-defendants City, County, Does, and Creel, and thus acted under color of law.

70. Plaintiff sues Murray in his individual capacity.

## FLATLANDS III, LLC

71. At all relevant times, Flatlands III, LLC ("Flatlands"), was listed as a domestic limited liability corporation operating Champy's in East Ridge, Tennessee.

72.     Flatlands' registered agent is Seth Rollins Champion, with an address of 2674 Brenon Wood Lane, Signal Mountain, TN 37377, and Flatlands may be served with a copy of the complaint and a summons there.

73.     At all relevant times, Flatlands employed Murray.

74.     Plaintiff sues Flatlands as respondent superior for the actions of Murray and thereby Flatlands acted in concert with co-defendants City, County, Does, and Creel, and thus acted under color of law.

### ROBIN NAVE-MONTERO

75.     At all times relevant, Robin Nave-Montero ("Montero") operated a store known as "The Robin's Nest," located in East Ridge, Tennessee.

76.     Montero was a participant to the petition and thus a participant to the unlawful acts averred herein.

77.     On **October 27, 2022,** Montero signed an affidavit in her individual capacity before Holloway. Creel and Wamp incorporated that affidavit in the petition.

78.     At all relevant times, Montero acted in concert with co-defendants City, County, Does, and Creel, and thus acted under color of law.

79.     Based upon Montero's affidavit, and the lack of an easily verifiable corporation listed with the Tennessee Secretary of State known as The Robin's Nest that operated in East Ridge, Tennessee, Plaintiff avers that Montero operated The Robin's Nest as a sole proprietor.

80.     Plaintiff sues Montero in her individual capacity.

### RANDALL W. KEITH (aka Randy Keith)

81.     At all times relevant, Randall W. Keith (aka Randy Keith) (hereinafter, "Keith") owned a store known as East Town Antiques ("East Town") in East Ridge, Tennessee.

82. Keith was a participant to the petition and thus a participant to the unlawful acts averred herein.

83. Keith claimed in an affidavit to be the "owner" of East Town, but he signed the affidavit in his individual capacity as "Randy Keith." Keith signed the affidavit on **October 27, 2022** before Holloway. Creel and Wamp incorporated that affidavit in the petition.

84. Based upon Keith's claims in his affidavit, Plaintiff avers that East Town Antiques, LLC is the alter ego of Keith, and thus the corporate veil between Keith and East Town Antiques should be pierced.

85. In the alternative, Keith acted also as an agent for East Town Antiques, LLC, which owned and operated East Town.

86. At all relevant times, Keith acted in concert with co-defendants City, County, Does, and Creel, and thus acted under color of law.

87. Plaintiff sues Keith in his individual capacity.

<u>EAST TOWN ANTIQUES, LLC</u>

88. At all relevant times, East Town Antiques, LLC ("East Town Antiques"), is listed as a domestic limited liability corporation operating East Town in East Ridge, Tennessee.

89. East Town Antiques' registered agent is Keith, with an address of 2210 Crescent Club Drive, Hixson, TN 37343, and East Town Antiques may be served with a copy of the complaint and a summons there.

90. At all relevant times, East Town Antiques operated under the direction of Keith. Based upon Keith's claims in his affidavit, Plaintiff avers that East Town Antiques is the alter ego of Keith, and thus the corporate veil between Keith and East Town Antiques should be pierced.

~ 15 ~

91.     In the alternative, Plaintiff sues East Town Antiques as respondent superior for the actions of Keith and thereby East Town Antiques acted in concert with co-defendants City, County, Does, and Creel, and thus acted under color of law.

KATIE GLAZE

92.     At all times relevant, Katie Glaze ("Glaze") operated a store known as "The Green Gardinia," located in East Ridge, Tennessee.

93.     Glaze was a participant to the petition and thus a participant to the unlawful acts averred herein.

94.     On **October 27, 2022,** Glaze signed an affidavit in her individual capacity before Holloway. Creel and Wamp incorporated that affidavit in the petition.

95.     At all relevant times, Glaze acted in concert with co-defendants City, County, Does, and Creel, and thus acted under color of law.

96.     Based upon Glaze's affidavit, and the lack of an easily verifiable corporation listed with the Tennessee Secretary of State known as The Green Gardinia that operated in East Ridge, Tennessee, Plaintiff avers that Glaze operated The Green Gardinia as a sole proprietor.

97.     Plaintiff sues Glaze in her individual capacity.

JESSICA WHEELER

98.     At all times relevant, Jessica Wheeler ("Wheeler") operated a store known as "Department One Three," located in East Ridge, Tennessee.

99.     Wheeler was a participant to the petition and thus a participant to the unlawful acts averred herein.

~ 16 ~

100.    On **October 27, 2022,** Wheeler signed an affidavit in her individual capacity before Holloway. Wheeler also identified her store as "Dept. One Three." Creel and Wamp incorporated that affidavit in the petition.

101.    At all relevant times, Wheeler acted in concert with co-defendants City, County, Does, and Creel, and thus acted under color of law.

102.    Based upon Wheeler's affidavit, and the lack of an easily verifiable corporation listed with the Tennessee Secretary of State known as Department One Three that operated in East Ridge, Tennessee, Plaintiff avers that Wheeler operated Department One Three as a sole proprietor.

103.    Plaintiff sues Wheeler in her individual capacity.

<u>MIKE BRUCE</u>

104.    At all times relevant, Mike Bruce ("Bruce") managed a store known as Holy Smoke Cigar Shop ("Holy Smoke") in East Ridge, Tennessee.

105.    Bruce was a participant to the petition and thus a participant to the unlawful acts averred herein.

106.    Although he claimed in an affidavit to be the "General Manager" for Holy Smoke, Bruce signed the affidavit in his individual capacity. Bruce signed the affidavit on **October 27, 2022**, before Holloway. Creel and Wamp incorporated that affidavit in the petition.

107.    In the alternative, Bruce acted also as an agent for Holy Smoke Premium Cigars & Pipes, PLLC, which owned and operated Holy Smoke.

108.    At all relevant times, Bruce acted in concert with co-defendants City, County, Does, and Creel, and thus acted under color of law.

109.    Plaintiff sues Bruce in his individual capacity.

~ 17 ~

<u>GREGG BOWMAN</u>

110. At all times relevant, Gregg Bowman ("Bowman") managed a store known as Holy Smoke Cigar Shop in East Ridge, Tennessee.

111. Bruce was a participant to the petition and thus a participant to the unlawful acts averred herein.

112. Although he claimed in an affidavit to be the "General Manager" for Holy Smoke Cigar Shop, Bowman signed the affidavit in his individual capacity. Bowman signed the affidavit on **October 27, 2022**, before Holloway. Creel and Wamp incorporated that affidavit in the petition.

113. In the alternative, Bowman acted also as an agent for Holy Smoke Premium Cigars & Pipes, PLLC, which owned and operated Holy Smoke Cigar Shop.

114. At all relevant times, Bowman acted in concert with co-defendants City, County, Does, and Creel, and thus acted under color of law.

115. Plaintiff sues Bowman in his individual capacity.

<u>HOLY SMOKE PREMIUM CIGARS & PIPES, PLLC</u>

116. At all relevant times, Holy Smoke Premium Cigars & Pipes, PLLC ("Holy Smoke"), was listed as a domestic limited liability corporation operating Holy Smoke Cigar Shop in East Ridge, Tennessee.

117. Holy Smoke's registered agent is Dennis Richard Massengale, with an address of 401 Pine Bluff Drive, Chattanooga, TN 37412, and Holy Smoke may be served with a copy of the complaint and a summons there.

118. At all relevant times, Holy Smoke employed Bruce and Bowman.

~ 18 ~

119.    Plaintiff sues Holy Smoke as respondent superior for the actions of Bruce and Bowman and thereby Holy Smoke acted in concert with co-defendants City, County, Does, and Creel, and thus acted under color of law.

**Facts:**

120.    The State of Tennessee's nuisance abatement statute is found at TENN. CODE ANN. § 29-3-101, *et seq.* ("statute").

121.    The statute allows for the padlocking of any public nuisance "upon the relation of ten (10) or more citizens and freeholders of the county wherein such nuisances may exist."

122.    Such "citizens and freeholders" authorized to bring such action are agents and state actors as defined under Tennessee case law found in *State ex rel. Evans v. Caldwell*, 53 Tenn. App. 195, 196, 381 S.W.2d 553, 554 (1964).

123.    Although state actors such as the State of Tennessee, District Attorney Generals, and police officers for city and county governments enjoy sovereign and qualified immunities, these immunities have not been extended to private persons who act in concert with such state, city, and county actors.

124.    The statute is overly broad, and it does not take into consideration that when padlocking a multi-residential location such as the Budgetel, people like the Plaintiff and the hundreds of persons, which included families, handicapped persons, children, and disabled veterans are and were (in this instance) deprived of their possessions and their homes.

125.    The statute did not provide any means by Plaintiff and other residents of the Budgetel to *directly* challenge the actions of the Defendants by either a notice and an opportunity to be heard in a pre-deprivation or a post-deprivation hearing.

126.     The statute contains the following definitions of "persons" and "places" that create a nuisance:

>     (3) "Person" means and includes any individual, corporation, association, partnership, trustee, lessee, agent or assignee; and

>     (4) "Place" means and includes any building, room enclosure or vehicle, or separate part or portion thereof or the ground itself and all the property on which the nuisance is located that is under the ownership, management or control of the violator.

TENN. CODE ANN. § 29-3-101(a)(3) and (4).

127.     In fact, the statute's broad sweep allows the deprivations as seen in this matter when arbitrarily applied by Wamp and the Defendants.

128.     Thus, the statute is unconstitutional.

129.     The Budgetel is a business operated by The Lodge of Chattanooga, LLC and provided long-term housing for the public in an "extended stay motel" environment.

130.     As noted by Creel in a state court hearing on December 5, 2022, there were many residents of the Budgetel who resided in the Budgetel for months at a time, and that the City allowed such long-term rentals of the rooms or were aware of the long-term rentals.

131.     The Budgetel is an "extended stay" motel. Extended stay motels are historically motels that meet the needs of business travelers, vacationing families, people relocating to a new city, employees of companies performing long-term work such as road construction, and such extended stay guests will book accommodations at a hotel for a week, month or longer.

132.     The predecessor to the Budgetel was the "Superior Creek Lodge."

133.     This is not the first time the City and its agents took action to padlock the facility.

134. In *State v. Superior Creek Lodge*, Hamilton County Criminal Court, No. 277190 (2010) (Rebecca Stern, Judge, presiding), the City Attorney for the City (John Anderson) filed an action seeking to close the Superior Creek Lodge.

135. Rather than kick the residents of the Superior Creek Lodge out into the street, Judge Stern set out specific conditions to the parties that the judge designed to protect the public but also allowed children, military veterans, and mentally and physically impaired and disabled persons to still reside in their homes while the litigation moved forward.

136. From 2010 through 2014, Judge Stern oversaw the matter until the action was dismissed *without the facility ever being padlocked and the residents kicked out.*

137. Plaintiff avers that the defendants in this matter did not learn a lesson.

138. On **October 27, 2022**, Defendants Montero, Keith, Glaze, Wheeler, Bruce, and Bowman met with Holloway, an agent for the City's attorney, and signed their affidavits.

139. On **November 10, 2022**, Defendants Hickman and Noble met with Holloway, an agent for the City's attorney, and signed their affidavits.

140. On **November 11, 2022**, Defendant Murray met with Holloway, an agent for the City's attorney, and signed his affidavit.

141. On or about **November 14, 2022**, Wamp authored a petition for abatement ("petition") pursuant to the statute. To be sure, Wamp signed the petition on **November 14, 2022.**

142. On **November 11, 2022**, Creel signed a verification of the facts and the goals set forth by Wamp in the petition.

143. The only named parties to the petition were State of Tennessee ("ex rel"), Wamp and the Budgetel.

144.     The petition and the affidavits contained tenuous claims of certain actions and conduct by persons without specifically identifying anyone with any particularity who resided at the Budgetel who caused the problems.

145.     The only persons named with any specificity were certain sex offenders whom Wamp and Creel knew resided at the Budgetel, but rather than remove these sex offenders, the Defendants used the power of the state to kick out the Plaintiff and the residents of the Budgetel.

146.     To be sure, Wamp, in her many public comments, used the claim that children resided in a facility where sex offenders also resided as justification to throwing out the children and everyone else (including the Plaintiff) onto the street without any ability for these people to recover their property or the money they paid for their rooms. Plaintiff and the residents were notified by the law enforcement officers present that they had only FOUR HOURS to vacate the property.

147.     At no time did any Defendant ever identify, name, hint or allege that Plaintiff was the cause of any of the tenuous reasons for the draconian action taken by the Defendants.

148.     Plaintiff relies in his income from the Veterans' Administration and from social security, and he relies solely on the Veterans' Administration for his health care.

149.     On September 30, 2022, Plaintiff entered into an agreement ("agreement") with the operators of the Budgetel to rent a room on a periodic basis.

150.     The period ran from September 30, 2022 through November 29, 2022, and Plaintiff had sole possession and use of the room for the periods of rent, which was $978.50 for the each period.

151.     Plaintiff paid the $978.50 in full from his limited income for the month of November 2022.

~ 22 ~

152. Prior to moving to the Budgetel, Plaintiff resided in an assisted living residence located in Dayton, Tennessee.

153. Plaintiff is also a partial amputee, has only one eye and cannot walk long distances.

154. Plaintiff does not own a motor vehicle, and he cannot legally operate a motor vehicle.

155. Plaintiff relies on taxis or rides he can obtain from other persons to go to the Veterans' Outpatient Clinic ("VA Clinic") to receive his medical care, which includes care for diabetes.

156. While living in Dayton, Tennessee, the nearest VA Clinic was in Athens, Tennessee.

157. The taxi fare from Dayton to Athens, and even Chattanooga was very expense for his limited income.

158. Hence, Plaintiff chose to live in Chattanooga to be nearer to a VA Clinic.

159. The Budgetel at the time was the best option for Plaintiff since he could reside there for lengthy periods and did not have to pay deposits for power, rent, and utilities, and it was close to a nearby VA Clinic where the taxi fare would not be as large.

160. When Plaintiff moved into the Budgetel, he owned few possessions. Those possessions included pots and pans, dishes and utensils, a toaster oven his sister (Dixie Bell) provided. Plaintiff's possessions also included his needles for his insulin and other medications. Plaintiff could not afford furnishings and the Budgetel provided all furnishings.

161. On **November 16, 2022, at about 7 am**, police knocked on Plaintiff's door and ordered him from his room and out into the cold. He was only allowed to leave with his clothes.

~ 23 ~

He was unable to take with him his meager belongings, but more importantly, he could not take his insulin needles and other medications.

162.    To be sure, Plaintiff and the other residents were kicked out a week prior to Thanksgiving and when some of the coldest weather of 2022 had just settled in. Additionally, many residents had to surrender their pets to East Ridge Animal Control since they could not take the animals with then. As stated previously, Plaintiff and the other residents of the Budgetel had only FOUR HOURS to vacate the facility.

163.    Police refused to allow Plaintiff the time to find someone to help him gather his personal property and transport him to another location. Plaintiff returned to the Budgetel on November 17, 2022 to obtain his personal property and seek refund of his money, but found only a locked fence and a no trespass notice on the fence, which prevented him from accessing his room. He was unsuccessful in contacting anyone associated with the Budgetel.

164.    During the December 5, 2022 hearing as set forth *supra*, Creel testified that East Ridge police detained an employee of the Budgetel after the facility was padlocked. Based upon Creel's testimony (which Plaintiff witnessed) the employee was attempting to obtain company records.

165.    On **November 19, 2022**, Plaintiff filed an action in the United States District Court, Eastern District of Tennessee seeking (in-part) injunctive relief to obtain his personal property. That action was styled: *Burkhalter v. Wamp*, No. 1:22-cv-289.

166.    After service of the lawsuit upon Wamp on **November 21, 2022**, Plaintiff and the Tennessee State Attorney General reached an agreement that allowed Plaintiff to access his room at the Budgetel to obtain his personal property.

167.    On **November 23, 2022**, Plaintiff, with the assistance of East Ridge officers (including Creel) was able to enter his former room and obtained his personal property. Plaintiff then dismissed his suit since he was able to obtain his personal property.

168.    As of the time of this lawsuit, Plaintiff has yet to receive the balance of the money he paid for the entire month of November 2022. Based upon information and belief, Plaintiff avers that the similarly situated residents of the Budgetel have been unable to retrieve their belongings nor been able to obtain refunds of the money they paid for their respective rooms.

169.    Despite the lessons from Judge Stern, the Defendants' actions were sudden, done with little to no notice to the residents of the Budgetel, and with absolutely NO prior notice to the Plaintiff.

170.    Rather than making ***reasonable efforts*** to assist Plaintiff and the other residents in the move or show any empathy, Wamp made very public and ill-considered comments such as:

> - the children were better off removed from the Budgetel
>
> -the facility was a "cesspool"
>
> - and even called being sued in *Burkhalter v. Wamp* a "badge of honor."

171.    Plaintiff avers that the Defendants were emboldened to commit and persist (by continued deprivation of the personal property of the residents of the Budgetel) in the unlawful actions by the example Wamp set and is evidence of the lack of concern by all Defendants for the rights of the Plaintiff and the Budgetel residents.

172.    As a direct and proximate cause of the acts and omissions of the Defendants, Plaintiff has suffered a loss of his property without Due Process, incurred the costs of litigation to force Wamp, the City, and Creel to allow him back onto his room to obtain his meager

possessions, and has endured mental anguish by the humiliation caused by the conduct of the Defendants.

**Cause[s] of Action:**

**COUNT I:**

**VIOLATION OF THE FOURTH AMENDMENT
TO THE UNITED STATES CONSTITUTION:
(AGAINST ALL INDIVIDUALLY NAMED DEFENDANTS AND CITY)**

**UNREASONABLE SEIZURE WITHOUT PROBABLE CAUSE
(42 U.S.C. § 1983)**

173.    Plaintiff incorporates the averments in this Complaint as if fully set forth herein.

174.    In summary, as alleged more fully above, the individual defendants and the City, acting individually, jointly, and in conspiracy, procured through tenuous claims under oath, a deprivation of the Plaintiff's right to be free from unreasonable seizure of his personal property without Due Process in violation of the Fourth Amendment to the United States Constitution.

175.    The City was on notice that such actions as set forth herein were fraught with unconstitutionality. Yet, the City took such action a second time. As such, the City's actions were the driving force behind the misconduct averred herein.

176.    Additionally, the direct involvement by at least one high-level policy maker for the City places direct liability upon the City.

177.    Plaintiff sues all the individual Defendants and the City under this Count.

**COUNT II:**

**VIOLATION OF DUE PROCESS CLAUSE OF THE FOURTEENTH
AMENDMENT TO THE UNITED STATES CONSTITUTION:
(AGAINST ALL INDIVIDUALLY NAMED DEFENDANTS AND THE CITY)**

**DEPRIVATION OF PLAINTIFF'S PERSONAL PROPERTY AND RESIDENCE
WITHOUT DUE PROCESS OF LAW
(42 U.S.C. § 1983)**

178.    Plaintiff incorporates the averments in this Complaint as if fully set forth herein.

179.    The cold and callous actions of the individual Defendants and the City was tantamount to a dispossession of a leasehold of the room at the Budgetel without Due Process.

180.    The cold and callous actions of the individual Defendants and the City was tantamount to a seizure of Plaintiff's personal property without Due Process.

181.    In summary, as alleged more fully above, the individual defendants and the City acting individually, jointly, and in conspiracy, procured through tenuous claims under oath, a deprivation of the Plaintiff's right to be free from a deprivation of his personal property, deprived him of funds that he paid for the room, and deprived him of his residence without a pre-deprivation or post-deprivation hearing, and thus deprived him of Procedural Due Process in violation of the Fourteenth Amendment to the United States Constitution.

182.    The cold and callous actions of the individual Defendants and the City through the petition deprived Plaintiff of an ability to have proper notice of these Defendants' scheme, and thus an inability to seek redress through the state court action prior to these Defendants kicking Plaintiff out into the cold.

183.    The individual Defendants and the City took the cold and callous action without regard to the welfare of Plaintiff and numerous other occupants, many who are children.

184.    The individual Defendants and the City's cold and callous actions happened just prior to the Thanksgiving holiday, during cold weather, and during a time when inflation is at its highest peak in decades, making it difficult for Plaintiff and others of limited means to find affordable housing and in Plaintiff's situation, replace the items his sister gave him.

185. The City was on notice that such actions as set forth herein were fraught with unconstitutionality. Yet, the City took such action a second time. As such, the City's actions were the driving force behind the misconduct averred herein.

186. Additionally, the direct involvement by at least one high-level policy maker for the City places direct liability upon the City.

187. Plaintiff sues all the individual Defendants and the City under this Count.

## COUNT III:

### VIOLATION OF THE DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION:

### CONSPIRACY TO DEPRIVE CONSTITUTIONAL RIGHTS
### (AGAINST ALL INDIVIDUALLY NAMED DEFENDANTS AND THE CITY)
### (42 U.S.C. § 1983)

188. Plaintiff incorporates the averments in this Complaint as if fully set forth herein.

189. In summary, as more fully alleged above, the individual Defendants, acting in concert with each other, reached an agreement among themselves to deprive Plaintiff of his rights to notice and to be secure in his property. In doing so, these co-conspirators conspired to accomplish an unlawful purpose by an unlawful means. In furtherance of their conspiracy, each of these co-conspirators committed overt acts and were otherwise willful participants in joint activity.

190. The individual Defendants acted with malice and deliberate indifference to Plaintiff's constitutional rights.

191. The City was on notice that such actions as set forth herein were fraught with unconstitutionality. Yet, the City took such action a second time. As such, the City's actions were the driving force behind the misconduct averred herein.

192. Additionally, the direct involvement by at least one high-level policy maker for the City places direct liability upon the City.

193. Plaintiff sues all the individual Defendants and the City under this Count.

## COUNT IV:

### CLAIMS AGAINST THE COUNTY FOR THE INTENTIONAL ACTIONS OF THE DOE DEFENDANTS

### (TENN. CODE ANN. § 8-8-302)

194. Plaintiff incorporates the averments in this Complaint as if fully set forth herein.

195. As noted by Creel during his testimony before the state court on December 5, 2022, the County had deputies who engaged in the intentional misconduct against Plaintiff that resulted in a deprivation of his constitutionally protected rights, and a conversion of his personal property and a loss of his use of the room.

196. As a result, Plaintiff believes the Doe defendants, by lending their respective offices and authority, while acting under color of law and within the scope of their employment with the County participated in the unlawful claims herein.

197. Through TENN. CODE ANN. §8-8-302, the County is liable as a principal for all torts committed by its employees or agents, including the Doe defendants.

## COUNT V:

### CLAIMS AGAINST THE INDIVIDUAL DEFENDANTS FOR CONVERSION

### (TENNESSEE COMMON LAW)

198. Plaintiff incorporates the averments in this Complaint as if fully set forth herein.

199. The actions of the individual Defendants resulted in a loss of the money Plaintiff paid for an entire month of November 2022, and the loss of his personal property no matter how short the time.

~ 29 ~

200.    Plaintiff sues all individual Defendants, including Creel in his individual capacity, under this Count.

## COUNT VI:

**CIVIL CONSPIRACY AGAINST ALL INDIVIDUAL DEFENDANTS
AND HAMILTON COUNTY GOVERNMENT
(TENNESSEE COMMON LAW)**

201.    Plaintiff incorporates the averments in this Complaint as if fully set forth herein.

202.    In the manner described above, the individual Defendants acting in concert with each other in a malicious combination, conspired by concerted action to accomplish an unlawful purpose by unlawful means – conversion of property.

203.    In furtherance of the conspiracy, the individual Defendants committed overt acts and were otherwise willful participants in joint activity including but not limited to the deprivation of the Plaintiff's rights to be free from unreasonable seizure of his personal property.

204.    The individual Defendants were acting under color of law. Additionally, Creel and the Does acted within the scope of their employment when they took these actions.

205.    Through TENN. CODE ANN. § 8-8-302, the County is liable as principal for all torts committed by its employees or agents, including the misconduct by the Does.

206.    As a direct and proximate result of the Defendants' actions, Plaintiff's constitutional rights were violated.

## COUNT VII:

**NEGLIGENCE AGAINST ALL INDIVIDUAL DEFENDANTS AND THE CITY
(EXCLUDING THE DOE DEFENDANTS)**

**(TENNESSEE COMMON LAW)**

207.    Plaintiff incorporates the averments in this Complaint as if fully set forth herein.

~ 30 ~

208. The City had a duty to ensure that Creel was properly trained and supervised to ensure that his conduct in setting this matter into motion did not have the far reaching impact it had in the Plaintiff, the residents of the Budgetel, and the community as a whole. To be sure, the impact of the sudden removal of the Plaintiff and the residents have exhausted the little resources available by organizations who help those suffering calamities such as what is seen here.

209. Creel and the individual Defendants had a duty to refrain from making claims that were at best, flimsy, while the individual Defendants knew or should have known would result in the humanitarian disaster seen here.

210. As a direct and proximate result of the negligence of Creel and the individual Defendants, Plaintiff's rights were violated.

## COUNT VIII:

### INDEMNIFICATION - TENNESSEE LAW CLAIM

211. Plaintiff incorporates the averments in this Complaint as if fully set forth herein.

212. Tennessee law provides that the County is directed to pay any tort judgment for compensatory damages for which its employees are liable within the scope of their employment activities.

213. The Doe defendants at all times relevant in committing the actions and omissions described herein were employees of the County and acted within the scope of their employment.

### RELIEF REQUESTED

WHEREFORE, the Plaintiff requests relief as follows:

1) An award of nominal, punitive, compensatory, and presumed damages for each violation of Plaintiff's constitutional rights;

2)    Awarding Plaintiff his attorney and expert witness fees and all other costs of litigation pursuant to 42 U.S.C. §1988, and under other applicable law;

3)    Pre-judgment and post judgment interest;

4)    The right to conform the pleadings to the proof and evidence presented at trial;

5)    Pierce the corporate veil between Keith and East Town; and

6)    Such other relief as the Court deems just and equitable.

## JURY DEMAND

Plaintiff hereby demands a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all issues so triable.

## REQUEST FOR CLASS ACTION CERTIFICATION

Plaintiff hereby requests that this Court, grant Class Action Certification pursuant to Federal Rule of Civil Procedure 23.

Respectfully submitted,

By: /s/ *Robin Ruben Flores*
**ROBIN RUBEN FLORES**
**TENN. BPR #20751**
**GA. STATE BAR #200745**
Attorney for Plaintiff
4110-A Brainerd Road
Chattanooga, TN  37411
O: (423) 267-1575
F: (423) 267-2703
robin@robinfloreslaw.com