# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
## AT CHATTANOOGA

| | | |
|---|---|---|
| **CHARLES FRANKLIN BURKHALTER,** | ) | |
| | ) | |
| **Plaintiff** | ) | |
| | ) | **NO. 1:22-CV-307** |
| **v.** | ) | |
| | ) | |
| | ) | |
| **HAMILTON COUNTY GOVERNMENT, et al.,** | ) | |
| | ) | |
| **Defendants** | ) | |

## <u>BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OF DEFENDANT HAMILTON COUNTY, TENNESSEE</u>

## INTRODUCTION AND SUMMARY OF ARGUMENT

This case arises from the execution of a nuisance abatement order issued by Hamilton County Criminal Court Judge Boyd Patterson on November 14, 2022. The undisputed material facts establish that Hamilton County deputies acted on that date to execute a facially valid court order—an act required by law and integral to the judicial process.

Although federal civil rights claims were asserted against other defendants, the Plaintiff makes only state-law claims against Hamilton County ("County") in this action. Specifically, the Plaintiff seeks relief under Tenn. Code Ann. § 8-8-302, alleging that County deputies acted with intentional misconduct while executing the abatement order, committed conversion, and engaged in a civil conspiracy. The Plaintiff further claims that the County is obliged, pursuant to state law, to pay any tort judgment for damages caused by its employees acting within the scope of their employment.

On this record, Hamilton County is entitled to summary judgment. First, the County did not initiate, procure, or influence the issuance of the abatement order, and that order has not been

successfully challenged in this or any other litigation. It was a valid directive from the Hamilton County Criminal Court.

While the Plaintiff states that "at least one Hamilton County deputy was at his door and ordered him to leave," the record contains no evidence to support his claim that any deputy engaged in intentional misconduct in executing the abatement order. In fact, the record established that deputies acted pursuant to and within the scope of that order.

Meanwhile, this Court has previously dismissed conversion and conspiracy claims against other defendants in this action, and the same reasoning applies to these same claims against the County. For these reasons, the County has no obligation to indemnify the unnamed individual deputies for any tort judgment awarding compensatory damages.

## BACKGROUND

The recitation of facts from this Court's Order of August 17, 2023 (Doc. 116) provides an accurate summary of the matter, as follows:

Beginning in September 30, 2022, Plaintiff Charles Franklin Burkhalter rented a room at the Budgetel Inn, an extended stay motel in Chattanooga, Tennessee, for $978.50 "each period" [Doc. 64 ¶¶ 144, 181-82, 190]. On November 14, 2022, District Attorney General Coty Wamp signed and filed a nuisance abatement petition for the Budgetel Inn under Tennessee's nuisance abatement statute, Tenn. Code Ann. § 29-3-101, et seq. [Id. ¶¶ 135, 156-57]. The Honorable Judge Boyd Patterson of the Hamilton County Criminal Court granted the petition [See id. ¶ 166]. Judge Patterson's Order directed "lawful peace officer[s]" to "knock and announce at each room of the Budgtel [sic] Inn to provide notice to the guests/residents of this Order and to allow such persons time to collect their personal belongings and vacate the premises" [Id.]. The Order further directed "[t]he owner, operator or responsible party" for the Budgetel Inn to "provide any lawful peace officer with a master key to all rooms at the Budgetel Inn in order to effectuate the removal of all persons pursuant to this Order" [Id. ¶ 167].
On the morning of November 16, 2022, "representatives" from the Hamilton County Sheriff's Office "act[ing] within the scope and course of their employment with the County" gathered "for an operational brief" [Id. ¶¶ 65, 66].  At approximately 7:00 a.m., officers served Judge Patterson's Order and "knocked on each and every door, made contact, explained to folks what was going on, gave them a list of resources[,] and told them that they needed to gather their belongings [and] begin moving out" [Id. At 3, ¶ 65]. A "Hamilton County deputy, possibly a

2

sergeant" came to Plaintiff's door at the Budgetel Inn and "told Plaintiff that he had only FOUR HOURS to vacate the property" [Id. ¶¶ 164, 193-94]. Plaintiff "was only allowed to leave with his clothes" and did not take "his meager belongings" or "other medications" [Id. ¶ 193]. "Police" did not permit Plaintiff "the time" to assist with "gather[ing] his personal property" or "transport him to another location" [Id. ¶ 196]. On November 23, 2022, Plaintiff "was able to enter his former room and obtained his personal property" [Id. ¶ 200]. But Plaintiff has not "receive[d] the balance of the money he paid for the entire month of November 2022" to rent a room at the Budgetel Inn [Id. ¶ 201].
(Doc. 116, PageID ##1226-1227)

## UNDISPUTED FACTS

1.      On or about November 14, 2022, District Attorney General Coty Wamp filed a Verified Petition for Abatement of Nuisance pursuant to T.C.A. §29-3-10 to seek the closure of the "Budgetel Inn and Suites" in East Ridge, Tennessee ("Inn"). (Doc. 75-1; Verified Petition; PageID ##658-784).

2.      Hamilton County Criminal Court Judge Boyd Patterson signed and entered on November 14, 2022, a temporary injunction/restraining order ("TRO") regarding the Inn. (Doc. 75-2; Temporary Injunction/Restraining Order; PageID ##785-787).

3.      The TRO stated that the Inn was closed "in all respects until further order of the Court." (Doc. 75-2; PageID #785).

4.      The TRO also provided that any lawful peace officer was to be provided access to rooms in the Inn "to effectuate the removal of all persons pursuant to this Order." (Doc. 75-2; PageID #786).

5.      The TRO further directed that "Said lawful peace officers shall knock and announce at each room of the Budgetel Inn to provide notice to the guests/residents of this Order and to allow such persons time to collect their personal belongings and vacate the premises." (Doc. 75-2; PageID #785).

6.     Execution of the TRO as to the Plaintiff took place in the morning of November 16, 2022, as "police" knocked on his door and ordered him from his room.  (Doc. 64, Second Amended Complaint, ¶193, PageID # 598).

7.     The Plaintiff was one of the residents who was removed from Inn, but he cannot positively identify the Hamilton County deputy who spoke to him. (Doc. 64, ¶194, PageID #598).

8.     The Plaintiff was not able to gather all his belongings on November 16, 2022, but later was able to enter the property and obtain his personal property. (Doc. 64, ¶200, PageID # 599).

## STANDARD OF REVIEW AND APPLICABLE LAW

### Fed. R. Civ. P. 56

Under Fed. R. Civ. P. 56, summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The Court must view the facts in the light most favorable to the non-moving party and make all reasonable inferences that can be drawn from those facts. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986); Nat'l Satellite Sports, Inc. v. Eliadis, Inc., 253 F.3d 900, 907 (6th Cir. 2001).  In deciding whether summary judgment is appropriate, the Court refrains from "weigh[ing] the evidence and determin[ing] the truth of the matter," and instead asks, "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 251–52, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

The moving party bears the burden of demonstrating that no genuine issue of material fact exists. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). When the moving party has met this burden, however, the opposing party cannot "rest upon its . . . pleadings, but rather must set forth specific facts showing that there is a genuine issue for trial." Moldowan v. City of Warren, 578 F.3d 351, 374 (6th Cir. 2009) (citing Matsushita Elec. Indus. Co., 475 U.S. at 586; Fed. R. Civ. P. 56). "A genuine issue for trial exists only when there is sufficient 'evidence on which the jury could reasonably find for the plaintiff.'" National Satellite Sports, Inc., 253 F.3d at 907 (quoting Anderson, 477 U.S. at 249). "'[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment.'" Scott v. Harris, 550 U.S. 372, 380, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007) (emphasis in original) (quoting Anderson, 477 U.S. at 247–48).

### Tenn. Code Ann. § 8-8-302

Tenn. Code Ann. § 8-8-302 provides that:

> Anyone incurring any wrong, injury, loss, damage or expense resulting from any act or failure to act on the part of any deputy appointed by the sheriff may bring suit against the county in which the sheriff serves; provided, that the deputy is, at the time of such occurrence, acting by virtue of or under color of the office.

Id. This provision provides a remedy apart from the Tennessee Governmental Tort Liability Act, § 29-20-101, et seq. ("GTLA"), as to suits for intentional acts of official misconduct by sheriff's deputies. Newby v. Sharp, No. 3:11-CV-534, 2012 WL 1230764, at *5 (E.D. Tenn. Apr. 12, 2012) (quoting Hunt v. Wayne Cnty., No. 1-10-0035, 2012 WL 279482, at *7 (M.D. Tenn. Jan. 31, 2012)) (emphasis added).

While the GTLA governs liability for *negligent acts* attributable to a Tennessee municipality, Tenn. Code Ann. § 8-8-302 makes a County responsible by removing County

5

sovereign immunity for *non-negligent acts or omissions* of a deputy sheriff amounting to misconduct if, at the time of the injury, the deputy sheriff is 'acting by virtue of or under color of the office.'" Haynes v. Perry Cnty., No. M202001448COAR3CV, 2022 WL 1210462, at *4 (Tenn. Ct. App. Apr. 25, 2022).

The provisions of this statute are narrowly construed. Recognizing that this provision derogates from the immunity generally enjoyed by a sovereign, the courts of Tennessee have applied specific, limiting principles to interpret its reach.

Tenn. Code Ann. § 8-8-302 imposes liability for a deputy's "intentional misconduct" that took place while the deputy was acting "by virtue of or under color of his office." The Court of Appeals noted the following in Currie v. Haywood Cnty., No. W2010-00453-COA-R3CV, 2011 WL 826805 (Tenn. Ct. App. Mar. 10, 2011), with respect to what defines "intentional misconduct":

"Unfortunately, sections 8-8-301 to 303 of the Tennessee Code do not define this phrase. In considering the meaning of the phrase 'by virtue of or under color of office,' *for purposes of section 8-8-302*, this Court has previously stated:

A criminal statute, section 39–16–402 of the Tennessee Code Annotated, is instructive on the interpretation of the phrase "by virtue of or under color of office." Section 39–16–402 provides:

(a) A public servant commits an offense who, with intent to obtain a benefit or to harm another, intentionally or knowingly: ... (2) Commits an act under color of office or employment that exceeds the servant's official power....

(b) For purposes of subdivision (a) (2), a public servant commits an act under color of office or employment who acts or purports to act in an official capacity *or takes advantage of such actual or purported capacity.*

Tenn. Code Ann. § 39-16-402 (1997). Thus, when a deputy sheriff intentionally or knowingly uses his office *to facilitate a crime*, he

6

is acting under color of his office under this statute." Id. at 3-4. (emphasis added).

It is not coincidental that cases imposing liability under 8-8-302 typically involve situations where a deputy's actions rise to the level of criminal conduct. In Currie, for example, a deputy sheriff went to a victim's home to conduct police business and then sexually assaulted her. After termination of his employment, he pled guilty to a charge of official misconduct. Under those facts, the Court of Appeals upheld a judgment for damages against both Haywood County under 8-8-302 and against the deputy for his own assaultive acts.

Although county liability under this statute may hinge in some cases on whether the official was acting under color of office at the time of the act in question, there is no dispute in the present case that the Sheriff's deputies were operating on November 16, 2022, under color of law. The issue here, then, is whether there are genuine facts in the record that could support a finding that the alleged conduct by the deputies was wrongful at all or constituted intentional misconduct.

## ARGUMENT

### I. COUNTY DEPUTIES WERE PERFORMING STATUTORY DUTIES ON NOVEMBER 16, 2022, IN EXECUTING JUDGE PATTERSON'S ORDER

On this record, there is no dispute that Judge Patterson had jurisdiction to issue the TRO, which was facially valid when County deputies executed the order. Even if the order had been successfully challenged and overturned later, which it was not, the officers would have been acting in accordance with their sworn obligations.

Tenn. Code Ann. § 8-8-201 expressly states that:

(a) It is the sheriff's duty to:
(1) Execute and return, according to law, the process and orders of the courts of record of this state, and of officers of competent authority, with due diligence, when delivered to the sheriff for that purpose…

7

The deputies present at the Inn on November 16, 2022, were performing those duties pursuant to this statutory directive. Neither the County nor its agents had any role in filing the nuisance petition or appearing before the state court to seek the issuance of the abatement order.

Therefore, to the extent that proof in the record shows the TRO was obtained wrongfully, such misconduct does not extend to the deputies or the County. Rather, as officers of the court and sworn deputies, all County officers involved in this matter were charged with applying and enforcing the TRO. See, e.g., Michigan v. DeFillippo, 443 U.S. 31, 38, 99 S. Ct. 2627, 61 L. Ed. 2d 343 (1979) (noting that "[p]olice are charged to enforce laws until and unless they are declared unconstitutional").

Accordingly, the actions of County deputies on the date in question were carried out in accordance with state law. The court order under which they operated was facially valid and has never been overturned or invalidated as unconstitutional.

## II.    IMMUNITY APPLIES TO THE ACTIONS OF THE DEPUTIES

In Luna v. White Cnty., No. M2014-02111-COA-R3-CV, 2015 WL4119766 (Tenn. Ct. App. June 29, 2015), a county sheriff was entitled to qualified immunity against a claim of false imprisonment where a plaintiff was incarcerated pursuant to a "facially valid bench warrant". In that case, the Tennessee Court of Appeals reviewed the arrest and subsequent incarceration of Joann Luna, who alleged that constitutional and other rights were violated by White County and its officials in mistaking her for another person named "Jo Ann Luna," the subject of an outstanding arrest warrant. The plaintiff was arrested on a bench warrant and then allegedly imprisoned for 13 days without a hearing or the opportunity to appear before a judge or jury.

The plaintiff in Luna made both federal and state-law claims, including state causes of action under the GTLA and Tenn. Code Ann. § 8-8-302. Ms. Luna cited State ex rel. Anderson

v. Evatt, 63 Tenn. App. 322, 471 S.W.2d 949, 950 (1971) to assert that an officer has a duty to act "prudently, reasonably, and [to] use ordinary care in making arrest, including the ascertainment that the right person is being arrested." Meanwhile, the defendants, including White County, the sheriff, and a deputy, moved for summary judgment. The trial court granted their respective motions.

In upholding the lower court, the Middle Section determined that White County was immune under the GTLA and the Public Duty Doctrine. The latter principle comes from common law and "shields a public employee from suits for injuries that are caused by the public employee's breach of a duty owed to the public at large." Ezell v. Cockrell, 902 S.W.2d 394, 397 (Tenn. 1995); see also Hurd v. Woolfork, 959 S.W.2d 578, 581 (Tenn. Ct. App. 1997) (holding that an allegation that a sheriff was negligent in failing to promptly and properly process an arrest warrant invoked the public duty doctrine because the sheriff's duty to execute warrants is a public duty "not owed to any individual in particular.").

As for the sheriff and the deputy who executed the warrant in Luna, the court ruled that they were entitled to qualified immunity. With respect to how qualified immunity affects a claim made against a county under Tenn. Code Ann. § 8-8-302, the Luna court upheld the lower court's determination that, since the sheriff and the arresting deputy were entitled to qualified immunity, no liability could be imputed to White County pursuant to that statute. ("And since Long is immune, there is no liability to be imputed to the county under Tenn. Code Ann. § 8–8–302). Id. at 9. All state-law claims, whether based on negligence or intentional misconduct, were dismissed.

Luna was cited with approval in Brown v. City of Franklin, No. 3:16-CV-01342, 2016 WL 6948363 (M.D. Tenn. Nov. 28, 2016). This case also dealt with an allegedly improper arrest.

9

The plaintiff, however, clearly stated that she had been incarcerated pursuant to a *facially valid* capias warrant. The court noted that, under state law, even if she had alleged facts demonstrating the sheriff's personal involvement in her alleged false imprisonment, he would be entitled to qualified immunity if he had reasonable grounds to incarcerate the plaintiff pursuant to a facially valid capias. The court then concluded that, "And since Long is immune, *there is no liability to be imputed to the county under Tenn. Code Ann. § 8–8–302*." Id. at 5. (emphasis added).

The same result should apply here. No federal-law claims are made against the Hamilton County Defendants, and no claim of negligence is made seeking relief under the GTLA. Rather, only intentional wrongdoing is alleged. The record, however, supports a finding that the unnamed deputies are entitled to the same immunity recognized in <u>Luna</u>. Because those officials are immune, no liability can be imputed under that provision, and summary judgment is appropriate for that reason.

## III. THERE IS NO GENUINE ISSUE OF MATERIAL FACT REGARDING MISCONDUCT ON THE PART OF THE DEPUTIES

Even if this Court concludes that the deputy defendants are not entitled to immunity in this matter, or should it be determined that such immunity does not impact recovery under Tenn. Under Code Ann. § 8-8-302, the record in this case does not create a genuine issue of fact regarding officer misconduct. No evidence before the Court suggests that the deputies involved acted recklessly or wrongfully. The record is insufficient to support the Plaintiff's allegations that County deputies engaged in intentional misconduct while executing the abatement order, committed conversion, and engaged in a civil conspiracy.

### a. Any evidence of intentional misconduct is insufficient to create a material fact issue

In sum, the Plaintiff claims that the County deputies engaged in intentional misconduct but fail to demonstrate how their conduct was wrongful. The TRO decreed that the Inn was

10

closed "in all respects until further order of the Court." (Doc. 75-2; PageID #785). It required the Inn to provide officers access "to effectuate the removal of all persons pursuant to this Order." (Doc. 75-2; PageID #786). The only direction provided by the TRO further was that "Said lawful peace officers shall knock and announce at each room of the Budgetel Inn to provide notice to the guests/residents of this Order and to allow such persons time to collect their personal belongings and vacate the premises." (Doc. 75-2; PageID #785). This record fails to establish that the County deputies did anything in contravention of Judge Patterson's order.

The Plaintiff complains that "police" knocked on his door early on November 16, 2022, but he cannot positively identify any Hamilton County deputy who spoke to him. (Doc. 64, ¶194, PageID #598). He claims he could not initially gather all his belongings, but acknowledges he was later able to return and retrieve his personal property. (Doc. 64, ¶200, PageID # 599). These claims do not demonstrate that the deputies acted contrary to the provisions of the TRO. Therefore, because there is no evidence of wrongful conduct by the deputies, this Court should determine that the County has no liability under Tenn. Code Ann. § 8-8-302 for "misconduct", and the County should be granted summary judgment on this allegation.

### b. The County has no liability for alleged conversion

A plaintiff must allege "the appropriation of" their property to another's "own use and benefit, by the exercise of dominion over the property, in defiance of the plaintiff's rights to state a conversion claim under Tennessee law. See Am. Bank, FSB v. Cornerstone Cmty. Bank, 733 F.3d 609, 614 (6th Cir. 2013) (quotation omitted). In previously dismissing East Ridge Assistant Police Chief Josh Creel, this Court determined that the Second Amended Complaint failed to allege any facts showing that Creel appropriated the Plaintiff's property for his own use and benefit. (Doc. 128: Memorandum Opinion and Order, PageID # 1277).

The same reasoning applies to the unnamed County deputies. In the absence of an underlying tort committed by a County official, no liability exists under Tenn. Code Ann. § 8-8-302 on this theory either.

**c. The record does not support the civil conspiracy claim against the County Deputies**

Lastly, the civil conspiracy claim fails on this record. In dismissing Counts Six and Seven of the Second Amended Complaint against Chief Creel, this Court noted earlier in the Memorandum and Opinion and Order:

> A "civil conspiracy is a combination between two or more persons to accomplish by concert an unlawful purpose, or to accomplish a purpose not in itself unlawful by unlawful means." See Menuskin v. Williams, 145 F.3d 755, 770 (6th Cir. 1998) (quotation omitted). There must be a "common design" among the conspirators. Id. Here, the Second Amended Complaint does not allege any "common design" or purpose among the purported conspirators identified in Count Seven. To the contrary, the Second Amended Complaint pleads the absence of any commonly-shared design or purpose [See Doc. 64 ¶¶ 159, 162].

In sum, then, this Court has already determined that there was no conspiracy in which the County deputies participated. For this reason, the County is entitled to summary judgment on this claim as well.

## CONCLUSION

For the foregoing reasons, Defendant Hamilton County requests that this Court grant its motion for summary judgment and dismiss all claims against the County with prejudice.

**HAMILTON COUNTY ATTORNEY'S OFFICE**

By: _s/ R. Dee Hobbs_____
R. Dee Hobbs, BPR No. 10482
625 Georgia Avenue, Suite 204
Chattanooga, TN 37402
Telephone/Facsimile: 423-209-6150/6151
Email: rdhobbs@hamiltontn.gov
Special Counsel

12

## CERTIFICATE OF SERVICE

I hereby certify that on April 1, 2026, a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. mail or by hand delivery. Parties may access this filing through the Court's electronic filing system.

s/ *R. Dee Hobbs*
R. Dee Hobbs

13